UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-16(DSD/JJK)

H.R., a minor child, by and
through his Parents and
Natural Guardians S.R. and
C.R.,

       Plaintiffs,

v.                                **ORDER**

The Minnesota State High School
League and Craig Perry,

       Defendants.


    Matthew Berner, Esq. and Droel PLLC, 7900 Xerxes Avenue
    South, Suite 1930, Bloomington, MN 55431, counsel for
    plaintiffs.

    Kevin M. Beck, Esq. and Kelly & Lemmons, PA, 7300 Hudson
    Boulevard, Suite 200, St. Paul, MN 55128, counsel for
    defendants.


This matter is before the court upon the motion for preliminary injunction by H.R., by and through his parents, S.R. and C.R. (collectively, plaintiffs). Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion for preliminary injunction.


**BACKGROUND**

This civil-rights dispute arises from the determination by defendants Minnesota State High School League (MSHSL) and MSHSL Associate Director Craig Perry (collectively, defendants) that H.R. is ineligible to compete in varsity interscholastic athletics

during the 2012-2013 school year.  H.R. is a tenth-grade student at Holy Family Catholic High School (HFCHS) in Victoria, Minnesota. Ver. Compl. ¶ 6.  H.R. resides with his parents in Hutchinson, Minnesota.  Id.

During grades six through eight, H.R. attended Hutchinson Middle School (HMS).  Id. ¶ 7.  While at HMS, H.R. alleges that he was assaulted, threatened and harassed by his classmates.  Id.  As a result, H.R. moved to his grandparents' home in Woodbury, Minnesota and attended ninth grade at Woodbury High School (WHS). Id. ¶ 10.  H.R. did not participate in interscholastic athletics at WHS.  Id.

Due to his grandmother's poor health, H.R. returned to Hutchinson to live with his parents after his ninth-grade year. Id. ¶ 12.  In fall 2012, instead of attending Hutchinson High School with his former classmates, H.R. enrolled at HFCHS.  Id. ¶ 13.  H.R. joined the hockey team at HFCHS and earned a spot on the varsity roster.  Id. ¶ 14.

Pursuant to MSHSL Bylaw 111.00, a transfer student may not participate in varsity athletics for one calendar year after transferring unless the student meets one of the following criteria:

> A. **9th Grade Option:** the student is enrolling in the 9th grade for the first time.
>
> B. **Family Residence Change:** the student transfers from one public school district attendance area to another public school

2

district attendance area at any time during the calendar year in which there is a change of residence and occupancy in Minnesota by the student's parents ....

C. **Court Ordered Residence Change for Child Protection:** The student's residence is changed pursuant to a child protection order[,] placement in a foster home, or a juvenile court disposition order.

D. **Divorced Parents:** A student of divorced parents who have joint physical custody of the student, as indicated in the divorce decree, who moves from one custodial parent to the other custodial parent ....

E. **Move From Out of State:** If a student's parents move to Minnesota from a state or country outside of Minnesota and if the student moves at the same time the parent establishes residence in a Minnesota public school district attendance area ....

Droel Aff. Ex. A, at 23-24.  HFCHS determined that H.R. did not meet any of these criteria and ruled him ineligible for varsity competition for the 2012-2013 school year.  Ver. Compl. ¶ 15; <u>id.</u> Ex. A.

Thereafter, on November 28, 2012, plaintiffs applied for leave from the MSHSL to appeal HFCHS's eligibility determination.  Ver. Compl. ¶ 16.  Bylaw 300.3A provides a non-exhaustive list of circumstances that warrant a waiver of the transfer rule:

1) Documented internal Board of Education policies regarding the movement of students within the school district.

2) Adoption, abandonment, or death of a parent.

3

3)    A documented negative change in the economic status of the student's parents which requires the student to return to the public school located in the attendance area where the student's parents reside.

4)    Intolerable conditions at the Sending School[1] as affirmed in writing by the Sending School.  When situations arise that the student or parents believe have created an intolerable condition, the acts complained of must first be reported to the appropriate administrators at the school so they have the opportunity to investigate and take any action they deem necessary to resolve the problem .... In general, allegations alone are not sufficient.  There must be some reasonable and believable substantiation presented to indicate an incident or incidents actually occurred.  As well, the perpetrators must be identified.

5)    Enrollment in an Advance Placement program, an International Baccalaureate program or similar advanced academic program not offered at the school the student attends.

6)    Administrative error in addressing a student's initial eligibility.

7)    Completion of a licensed program for treatment of alcohol or substance abuse, mental illness or emotional disturbance[,] provided all other eligibility rules are followed.

8)    Other conditions not covered above but which may be agreed to by both the Sending and Receiving Schools.

---

[1] "Sending School" is defined as "[t]he school last attended by the student."  Droel Aff. Ex. B, at 49.  In the present action, WHS is the sending school.

4

Droel Aff. Ex. B, at 47-48.  The MSHSL determined that H.R. did not meet any of the circumstances warranting a waiver, and denied his request on December 7, 2012.  Id. ¶ 17.

Plaintiffs then requested a "Fair Hearing at the League Level" to review the eligibility decision.  Id. ¶ 18.  A hearing was held on December 19, 2012, before an Independent Hearing Officer, retired Judge Michael T. DeCourcy, Sr.  Id. ¶ 20.  Judge DeCourcy determined that no exception to the transfer rule applied and recommended that the MSHSL affirm its decision that H.R. is ineligible for varsity competition.  Id. Ex. H.

On January 2, 2013, plaintiffs filed suit, alleging due process and equal protection violations under 42 U.S.C. § 1983 and a claim under Minnesota Statutes § 128C.03.  On that same day, plaintiffs moved for a preliminary injunction.[2]  The court heard oral argument on January 11, 2013, and all parties appeared through counsel.

## DISCUSSION

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a preliminary

---

[2] At oral argument, plaintiffs clarified that they seek injunctive relief only on their due process claim.

5

injunction should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The movant bears the burden of proof concerning each factor. See Gelco v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). No single factor is determinative. See Dataphase, 640 F.2d at 112-14. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. at 113.

## I.  Likelihood of Success on the Merits

The court first considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

Under the Fourteenth Amendment, no state actor[3] may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs argue that H.R. possesses a property interest in interscholastic varsity athletics,

---

[3] The MSHSL acts under color of state law when enforcing its eligibility rules. See Brenden v. Indep. Sch. Dist. 742, 477 F.2d 1292, 1295 (8th Cir. 1973).

6

and that he was deprived of this right without due process.[4] Specifically, plaintiffs claim that (1) they did not receive the MSHSL eligibility brochure prior to H.R. transferring to HFCHS, (2) the Bylaws are unconstitutionally vague and (3) H.R.'s substantive due process rights were infringed by an arbitrary and capricious appeal process.

### A.   Receipt of Eligibility Brochure

Plaintiffs argue that they did not have notice of the MSHSL transfer policy. "An essential principle of due process is that a deprivation of ... property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citation and internal quotation marks omitted). Specifically, plaintiffs argue that H.R. did not receive a copy of the MSHSL eligibility brochure prior to transferring to HFCHS. MSHSL Bylaw 303.00(1) provides that "[s]chool officials are required to provide a copy of the 'Eligibility Information Brochure' to each student interested in

---

[4] It is unclear whether interscholastic athletic eligibility is a constitutionally-protected property interest. Compare Peterson v. Indep. Sch. Dist. No. 811, 999 F. Supp. 665, 674 (D. Minn. 1998) ("[N]o property or liberty interest exists in a student's participation in extracurricular activities."), with Kaplan ex rel. J.K. v. Minneapolis Pub. Sch. Dist., 849 F. Supp. 2d 865, 877 (D. Minn. 2011) ("J.K. has a strong argument that, under Minnesota law, his property interest in an education extends to participation in interscholastic sports."). The court, however, need not answer this question because plaintiffs cannot show that they are likely to succeed on the merits of their due process claim.

participating in League-sponsored programs." Droel Aff. Ex. B, at 52.  Students must sign and acknowledge receipt of this brochure "[p]rior to practice or participation" in interscholastic athletics.  Id.

The Bylaws, however, only require that schools provide the brochure to "interested" students.  H.R. did not participate in athletics during his ninth-grade year and was not required to sign the acknowledgment form while attending WHS. See Ver. Compl. ¶ 10. Moreover, the eligibility requirements were readily available to H.R. prior to his transfer.  WHS distributed a student handbook to H.R. that directed interested students to contact WHS athletic director Jason Gonnion "[f]or more information about the MSHSL rules and student eligibility requirements."  Gonnion Aff. Ex. A, at 9.  Further, the eligibility requirements are published online and available at the MSHSL office.  Perry Aff. ¶ 5.  Because the MSHSL was not required to distribute the eligibility brochure and H.R. had access to the eligibility requirements before his transfer, allegations of a due process violation based on a lack of personal notice are unlikely to succeed on the merits.

**B.   Vagueness**

Plaintiffs next argue that the Bylaws are unconstitutionally vague and did not provide clear notice that H.R. would be deemed ineligible.  See M.J.D. ex rel. W.D. v. Minn. State High Sch. League, No. 12-2892, 2012 WL 5985514, at *6 (D. Minn. Nov. 29,

2012) ("[T]he existence of different reasonable readings [of a Bylaw] suggests that Plaintiffs did not have fair notice that W.D. would be ineligible before he decided to transfer."); Giblin v. Minn. State High Sch. League, No. 4-81-767, 1982 WL 963044, at *3 (D. Minn. Jan. 15, 1982) ("The transfer and residence rule did not provide clear notice to plaintiffs that it should be interpreted to apply to their transfers."). Specifically, plaintiffs argue that (1) the list of waiver circumstances in Bylaw 300.3A is non-exhaustive and (2) the Bylaws allow the MSHSL to reinstate a transfer student for "other conditions not covered above," without defining "other conditions." These provisions, however, allow the MSHSL to address unique eligibility situations and such discretion does not create a constitutional violation. See Burrows v. Ohio High Sch. Athletic Ass'n, 712 F. Supp. 620, 628 (S.D. Ohio 1988) ("The same degree of precision is not required of an athletic bylaw that would be required of a criminal statute."); cf. Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986) ("Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." (citation omitted)).

Moreover, plaintiffs' comparisons to W.D. and Giblin, where as-applied challenges to the transfer provision were sustained, are

unavailing.   Those cases involved transfer students who sought reinstatement based on a reasonable alternative interpretation of a specific Bylaw provision.   See W.D., 2012 WL 5985514, at *6 (reinstating athlete under exception for students enrolled in Advanced Placement course); Giblin, 1982 WL 963044, at *3 (reinstating athlete after determining that plaintiff's interpretation of transfer rule was reasonable).

By contrast, in the present action, H.R. relies on the "including, but not limited to" and "other conditions not covered above" language in Bylaw 300.3A to argue that H.R. should be reinstated.   Unlike the plaintiffs in W.D. and Giblin, however, H.R. could not have had a reasonable expectation of eligibility based on these discretionary, catch-all provisions.   As a result, plaintiffs have not demonstrated a likelihood of success based on the allegations of vagueness within the Bylaws.

### C.   Substantive Due Process

Finally, plaintiffs argue that the decision finding H.R. ineligible for interscholastic athletics was arbitrary and capricious.   "[A] substantive due process violation takes place when governmental power is exercised arbitrarily and oppressively." Singleton v. Cecil, 176 F.3d 419, 431 (8th Cir. 1999) (en banc) (Arnold, J., dissenting) (citation omitted). "Whether government action is arbitrary or capricious within the meaning of the Constitution turns on whether it was so egregious and irrational

that the action exceeds standards of inadvertence and mere errors of law." <u>Condor Corp. v. City of St. Paul</u>, 912 F.2d 215, 220 (8th Cir. 1990) (citations and internal quotation marks omitted). "The theory of substantive due process is properly reserved for truly egregious and extraordinary cases." <u>Myers v. Scott Cnty.</u>, 868 F.2d 1017, 1017 (8th Cir. 1989).

This is not such a case. While plaintiffs may disagree with the appeal decision, it was not irrational. The MSHSL and the independent hearing officer both considered- and ultimately denied - H.R.'s argument that an exception to the transfer rule applied. <u>See</u> Ver. Compl. Exs. C, H. Further, plaintiffs do not allege that the MSHSL acted with malice or intent to harm H.R. <u>See</u> <u>Richmond v. Fowlkes</u>, 228 F.3d 854, 859 (8th Cir. 2000) ("To succeed on [a substantive due process] claim, [plaintiff] must demonstrate arbitrary and capricious conduct ... by showing that there was no rational basis for the ... decision or that dismissal was motivated by bad faith or ill will."). As a result, plaintiffs cannot demonstrate a likelihood of success on their claim alleging a substantive due process violation.

In sum, plaintiffs have not shown a likelihood of success on any facet of their due process claim. Therefore, this <u>Dataphase</u> factor weighs against injunctive relief.

## II.  Irreparable Harm

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996) (per curiam). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Plaintiffs have demonstrated the possibility of irreparable harm.  "While not as grave as many matters that pass before this Court, the harm of losing a year of varsity eligibility is difficult to quantify and would constitute irreparable harm." W.D., 2012 WL 5985514, at *6 (citation omitted); see Giblin, 1982 WL 963044, at *2 ("If plaintiffs were ultimately found to be entitled to permanent injunctive relief after a trial on the merits, that relief would be meaningless if the athletic seasons were over.").  Therefore, this Dataphase factor weighs in favor of injunctive relief.

## III.  Balance of Harms

Under this factor, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene to preserve the status quo." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation

12

and internal quotation marks omitted).  As already explained, plaintiffs have demonstrated the possibility of irreparable harm. This harm is balanced by defendants' interests in the uniform application of eligibility rules and the need to enforce the Bylaws.  In balancing the harms, the court also notes that H.R. is still eligible to practice with the team and participate in junior-varsity competition.  Therefore, the court concludes that the balance of harms does not strongly favor either party, and that this Dataphase factor is neutral.

**IV.  Public Interest**

Finally, plaintiffs argue that the public interest weighs in favor of protecting the deprivation of constitutional rights. However, as already explained, plaintiffs have not established a substantial likelihood of success on the merits of their constitutional claim.  Moreover, the public is served by the uniform and predictable application of the MSHSL's eligibility requirements Therefore, this Dataphase factor weighs against entry of injunctive relief.  Accordingly, based upon a balancing of the Dataphase factors, a preliminary injunction is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that plaintiffs' motion for preliminary injunction [ECF No. 2] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 14, 2013

s/David S. Doty
David S. Doty, Judge
United States District Court

14